USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/31/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
PLATINUM-MONTAUR LIFE SCIENCES LLC, :
:
Plaintiff, :
: 17-CV-9591 (VEC)
v. :
: OPINION AND ORDER
NAVIDEA BIOPHARMACEUTICALS, INC., :
:
Defendant. :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Platinum-Montaur Life Sciences LLC ("Platinum-Montaur") claims breach of contract and unjust enrichment because Defendant Navidea Biopharmaceuticals, Inc. ("Navidea") has not made certain loan payments. Navidea argues that Platinum-Montaur has transferred the debt to another entity and is therefore no longer the right party to attempt collection. Platinum-Montaur responds that it assigned only a part of the Navidea debt and that it retains an interest in the remaining balance. Because Platinum-Montaur's assignment agreement unambiguously transferred its entire interest in Navidea's debt, the motion to dismiss for lack of standing is GRANTED.

**I.     Background**

On July 25, 2012, Navidea and Platinum-Montaur entered into a loan agreement, which essentially gave Navidea a line of credit. Complaint (Dkt. 1, Ex. A) ¶ 8. Pursuant to the loan agreement, Navidea gave Platinum-Montaur a promissory note that obligated Navidea to repay, with interest and other charges, the total amount of funds that Navidea would draw from Platinum-Montaur. Complaint, Ex. 3.

On March 22, 2016, Platinum-Montaur entered into an assignment agreement ("Assignment Agreement") with its affiliate, Platinum Partners Credit Opportunities Master Fund, LP ("PPCO"). Complaint, Ex. 6.[1] Under the terms of the assignment, Platinum-Montaur agreed to "sell, transfer, convey, and assign, set over and otherwise convey to [PPCO] all of its right, title, and interest in" the Navidea asset, including "all payments paid in respect thereof and all monies due, to become due or paid in respect thereof accruing on and after the Effective Date." *Id.* The Navidea asset was in turn described as the "[e]ntirety of the Subordinated Promissory Note, dated July 25, 2012 (as amended), issued by Navidea Biopharmaceuticals, Inc. to Platinum-Montaur Life Sceinces [sic], Inc. in the initial principal amount of $6,650,869.35." *Id.* In exchange for the rights to the Navidea asset, PPCO agreed to pay $7,022,715.21, which was, according to the Assignment Agreement, the sum of the principal indebtedness and the then-accrued interest. *Id.*

Platinum-Montaur alleges that Navidea's outstanding balance on the date of the assignment was actually substantially greater than PPCO's purchase price of $7,022,715.21, Complaint ¶ 20, and that the Assignment Agreement transferred to PPCO only a portion of the Navidea asset equivalent to the purchase price—*i.e.*, a dollar-for-dollar exchange. *Id.* ¶ 21. Platinum-Montaur further alleges that it retained an interest in the difference between the purchase price and Navidea's actual outstanding balance. *Id.* ¶ 21. According to Platinum-Montaur, that difference is approximately $1.5 million. *Id.* ¶ 20.

In March 2017, for reasons not relevant to this litigation, Navidea triggered its obligation to pay the outstanding debt, in full. *Id.* ¶¶ 23–24. In anticipation of the triggering event, in late

---

[1] The parties refer to the assignment agreement as Exhibit 6 of the Complaint, but the exhibit itself is labeled as number 66. This discrepancy also appears to be replicated with Exhibits 44, 55, 77, 88, 99 and 100 of the Complaint, which the Court will refer to as Exhibits 4, 5, 7, 8, 9, and 10 respectively.

February 2017, both PPCO and Platinum-Montaur demanded payment from Navidea. A court-appointed receiver of PPCO demanded $7,714,109.47, an amount that represented the original purchase price of the Navidea asset, plus later-accrued interest and other charges. Complaint, Ex. 8. Court-appointed liquidators of a fund that owns 99% of Platinum-Montaur then demanded a total of $1,913,963.48, allegedly representing the remaining balance that Platinum-Montaur retained after the assignment to PPCO, plus later-accrued interest and other charges. Complaint, Ex. 9.

Navidea paid the approximately $7.7 million that PPCO demanded but refused to pay Platinum-Montaur. Complaint ¶¶ 29–30. This lawsuit followed.

Platinum-Montaur alleges one count of breach of contract and one count of unjust enrichment. Complaint ¶¶ 39–51. Navidea removed the case from the New York Supreme Court to this Court on the basis of diversity jurisdiction. Dkt. 1.

## II. Discussion

Navidea has now filed a motion to dismiss the Complaint, arguing primarily that Platinum-Montaur assigned the entirety of its interest in the Navidea note and therefore no longer has standing to demand payment. Motion to Dismiss (Dkt. 36) at 8.

### A. Procedural Framework

Navidea brings the present motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the Second Circuit has explained, however, standing challenges are jurisdictional questions that are properly resolved under Rule 12(b)(1). *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1)." (internal citations omitted)). "The distinction is important because a typical dismissal under Rule 12(b)(6), *i.e.*, for

3

failure to state a claim, is an adjudication on the merits with preclusive effect," *id.*; whereas a dismissal for lack of standing must be without prejudice. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]here a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed without prejudice."); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("[W]here there is a lack of Article III standing, Article III deprives federal courts of the power to dismiss a case with prejudice[.]" (internal quotation marks and citations omitted)).

Because the Court has an independent obligation to apply the correct legal standard and to ensure the Court's compliance with the jurisdictional limitations of Article III, the Court will construe the Defendant's motion to dismiss as one pursuant to Rule 12(b)(1).

A Rule 12(b)(1) jurisdictional challenge can be either "facial or fact-based." *Carter*, 822 F.3d at 56. A facial challenge contends that a plaintiff lacks standing even "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id.* When assessing a facial challenge, the district court must determine whether the plaintiff's pleading documents "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). The court must also "accept[] as true all material factual allegations of the complaint," and "draw[] all reasonable inferences in favor of the plaintiff." *Carter*, 822 F.3d at 57 (citations omitted).

A defendant can mount a fact-based challenge by proffering evidence beyond the complaint and its attachments. *Id.* The plaintiff may then rest on its allegations, if the defendant's evidence is immaterial, or it may present additional counter evidence. *Id.* Where there are material disputes of jurisdictional facts, the district court must make factual findings as part of its inquiry. *Id.*

4

**B. Standing**

1. Breach of Contract

Navidea mounts what is best characterized as a facial challenge to Platinum-Montaur's standing to collect the Navidea debt. Specifically, Navidea argues that Platinum-Montaur has not plausibly alleged standing because the Assignment Agreement, which was attached as Exhibit 6 of the Complaint, unambiguously transferred to PPCO any and all interest in the debt. Motion to Dismiss at 8. If Navidea's interpretation is correct, then any overdue payments would be owed to some entity other than Platinum-Montaur, and Platinum-Montaur would lack the "personal stake in the outcome" of this litigation needed to demonstrate standing. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Platinum-Montaur does not dispute the validity of the Assignment Agreement and instead argues that the assignment was partial, and therefore Platinum-Montaur retains an enforceable, residual interest. Opposition to Motion (Dkt. 37) at 5. The Court's standing inquiry, therefore, turns on whether the assignment was complete or partial.

Pursuant to the choice-of-law provision in the Assignment Agreement, the Agreement is governed by the laws of New York State. Complaint, Ex. 6; *see AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) ("[A] federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state. Under New York law, 'courts will generally enforce choice-of-law clauses.'" (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 45 N.E.3d 917, 919 (N.Y. 2015))). New York courts have held that a complete assignment extinguishes the interest of the assignor, such that the assignor retains no right to pursue any interest in the assigned asset. *See Nat'l Fin. Co. v. Uh*, 279 A.D.2d 374, 375 (1st Dep't 2001) ("Having assigned the note, [plaintiff] was no longer the real party in interest with respect to an action upon the instrument and retained no right to pursue a claim against defendant." (citing *James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.*, 462 N.E.2d 137 (N.Y.

1984))). In contrast, a party who holds an identifiable interest following a partial assignment may bring an enforcement action against the debtor. *See Kronman v. Palm Mgmt. Assocs. Ltd. P'ship*, 276 A.D.2d 338, 339 (1st Dep't 2000); *see also Hauser v. W. Grp. Nurseries, Inc.*, 767 F. Supp. 475, 485 n.17 (S.D.N.Y. 1991) ("[I]t is now well-settled that partial assignments of instruments are recognized and enforced where the principal obligor will not be subject to a multiplicity of actions, and where the assignor retains an identifiable and enforceable residuary interest in notes assigned to a third-party." (citing *Blake v. Weiden*, 51 N.E.2d 677 (N.Y. 1943))); *Lipkowitz & Plaut v. Affrunti*, 407 N.Y.S.2d 1010, 1013 (Sup. Ct. 1978).

Determining whether Platinum-Montaur's assignment was complete or partial requires application of familiar contract principles. Under New York law, "a written agreement that is complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms" because "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014); *see also Wallace v. 600 Partners Co.*, 658 N.E.2d 715, 717 (N.Y. 1995) ("It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." (citation omitted)). If the writing is ambiguous, *i.e.*, susceptible to more than one reasonable interpretation, then the Court may consider extrinsic evidence to resolve the ambiguity. *State v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985).

"[W]hether a contract term is ambiguous is a threshold question of law for the court." *Walk-In Med. Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987); *see also Wallace*, 658 N.E.2d at 717. Accordingly, a court is not required to accept a plaintiff's allegation that a contract term is ambiguous, even at the motion to dismiss stage. *Bank of Am. Corp. v. Lemgruber*, 385 F. Supp. 2d 200, 218, 226 (S.D.N.Y. 2005) ("[T]he language of a contract is not made ambiguous simply because the parties urge different interpretations." (citing

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992))); *see also Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005) ("We are not obliged to accept the allegations of the complaint as to how to construe [contractual] documents.").

In this case, the language of the Assignment Agreement unambiguously assigned the entirety of Platinum-Montaur's interest in the Navidea debt to PPCO. The Agreement expressly provided that Platinum-Montaur would "sell, transfer, convey, and assign" to PPCO "*all* of its right, title, and interest in" the Navidea "asset." Complaint, Ex. 6 (emphasis added). The "asset" was then described as the "entirety" of the promissory note issued by Navidea on July 25, 2012.[2] Complaint, Ex. 6, Ex. A. The assignment was also exhaustive in terms of temporal coverage, as it included rights to "all payments paid in respect [to the note] and all monies due, to become due or paid in respect thereof accruing on and after the Effective Date" of the Agreement. Complaint, Ex. 6.

Platinum-Montaur's partial assignment argument, therefore, collides directly with the plain language of the contract. Platinum-Montaur claims that it retained an interest in $1.5 million of the Navidea debt. For that interpretation to prevail, "all" and "entirety" would have to mean not 100%, but 80%. Alternatively, Platinum-Montaur would have to construe the contract as specifically transferring the entirety of 80% of an asset. That tortured construction is implausible, as it renders superfluous the use of "entirety" and "all." *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New York law an interpretation of a contract that has the effect

---

[2] In some cases, a payment obligation pursuant to a promissory note is distinct and severable from a payment obligation created by a related agreement. *See Inner City Telecomm. Network, Inc. v. Sheridan Broad. Network, Inc.*, 260 A.D.2d 257, 257 (1st Dep't 1999). In this case, however, Platinum-Montaur does not allege, and there does not appear to be, any daylight between the payment obligation created by the note and that created by the loan agreement. Indeed, Platinum-Montaur refers to Navidea's allegedly unpaid balance as simultaneously obligated by both the promissory note and the loan agreement—likely because the promissory note was created by the loan agreement itself to reflect the loan balance. Complaint, Ex. 2 § 2.1 ("The Borrower's obligations hereunder shall also be evidenced by a promissory note."). Therefore, if the entirety of the note were assigned, there would no residual right to payment under the loan agreement either.

of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." (citation omitted)); *Bradley v. Earl B. Feiden, Inc.*, 864 N.E.2d 600, 605 (N.Y. 2007) ("A court must also be careful not to interpret a contracted [] provision in a manner that would render it meaningless.").

Platinum-Montaur's interpretation also runs afoul of the Assignment Agreement's temporal reach. According to Platinum-Montaur, it retained not only a right to a residual interest of $1.5 million, but also a right to interest and other charges that accrued after the assignment date. As noted above, however, the Assignment Agreement expressly gave PPCO rights to all future payments that were not yet due on the note. Complaint, Ex. 6.

The only evidence of a partial assignment in the text of the Assignment Agreement to which Platinum-Montaur cites is the purchase price of the Navidea debt. Specifically, the Assignment Agreement contains a table, which describes the asset being transferred as the "[e]ntirety" of the Navidea promissory note and lists the "[p]urchase [p]rice" as $7,022,715.21. Complaint, Ex. 6, Ex. A. Platinum-Montaur claims that the assignment was a dollar-for-dollar exchange, such that Platinum-Montaur only conveyed $7,022,715.21 of its interest in the Navidea debt in exchange for a payment of the same amount by PPCO. Nothing on the face of the Assignment Agreement, however, even remotely suggests that Navidea owed a cent more than $7,022,715.21.[3] In other words, Platinum-Montaur's interpretation requires inferring the existence of a remainder interest and using that inference to create a conflict where none exists.

Because nothing in the contract suggests anything other than a clear, complete, and unambiguous agreement, no extrinsic evidence may be used to prove the intent of the parties or

---

[3] To the contrary, the exhibit to the Assignment Agreement states that the $7 million figure was the sum of the outstanding principal and the accrued and unpaid interest. Complaint, Ex. 6, Ex. A.

to contradict the written terms. *See Ellington*, 21 N.E.3d at 1003. Accordingly, Platinum-Montaur's submission of SEC filings that purportedly show a Navidea balance in excess of $7,022,715.21 is irrelevant to the Court's interpretation of the contract.[4]

For similar reasons, the Court must also reject Platinum-Montaur's argument that the meaning of the Assignment Agreement is governed by Platinum-Montaur's and PPCO's alleged understanding today, notwithstanding the text of the contract. It is true that the intent of the parties is the north star of contract interpretation. As already discussed above, however, under New York law, the intent of the parties to a written contract is best demonstrated by the written agreement itself. *Ellington*, 21 N.E.3d at 1003. Platinum-Montaur cannot overcome the language of the Agreement simply by alleging that it and PPCO subjectively understand the contract to mean something contrary to the written text. *See Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000) ("In reviewing a written contract, the Court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use.").

In sum, the terms of the assignment were clearly written to be as expansive as possible, in terms of both time and scope. Accordingly, the Court concludes that the Assignment Agreement unambiguously transferred the entirety of Platinum-Montaur's interest, whatever it may have

---

[4] Even assuming that the Navidea balance was actually approximately $8.5 million on the date of the assignment, the Court notes that debt is regularly sold at a discount to account for risks in collection. Moreover, the Court is not in a business of evaluating whether a party received good value for its money—and then rewriting clear transaction terms to even the score if it did not.

been, to PPCO.[5] As such, Platinum-Montaur no longer has standing to claim a breach of contract against Navidea to collect what would be someone else's debt.[6]

2. Unjust Enrichment

For similar reasons, the Court concludes that Platinum-Montaur also lacks standing to maintain its unjust enrichment claim. As New York courts have held, "[t]he essential inquiry in any action for unjust enrichment is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972)). In this case, regardless of whether Navidea has received an undeserved windfall, Platinum-Montaur does not stand to benefit, as any disgorged funds would flow to PPCO or to whatever individual or entity that has an outstanding interest in the Navidea debt.

Platinum-Montaur seems to argue that the unjust enrichment claim must survive if the Court were to dismiss the contract claim, but that argument misapplies the law to these facts and is not directly relevant to the standing inquiry. To be sure, New York courts have held that

---

[5] Because the facial challenge is meritorious, the Court does not address what appears to be Navidea's half-hearted attempt at a fact-based challenge. Specifically, Navidea suggests that Platinum-Montaur, to the extent that the assignment to PPCO was a partial one, may have assigned whatever remainder interest it retained to Dr. Michael Goldberg, who is not a party to this litigation. *See* Motion to Dismiss, Ex. A. Because Navidea does not squarely raise the fact-based challenge and because the facial challenge resolves the jurisdictional question, the Court need not and does not decide whether Dr. Goldberg, PPCO, or some other entity is entitled to any outstanding payments. That fact is closely related to the merits of possible future litigation involving non-parties to this case and should not be unnecessarily decided in an abbreviated fashion.

[6] Although this result is compelled by the text of the Assignment Agreement, the Court concedes that it is curious that Platinum-Montaur would enter into an agreement that stated the principal outstanding indebtedness from Navidea was $6,560,869.35, when, based on Navidea's own Form 10-K filing, as of December 31, 2015 (just three months earlier), the outstanding principal balance was approximately $8.5 million. Complaint, Ex. 4. Whether that means the drafters of the Assignment Agreement made a mistake when drafting the contract or that Platinum-Montaur sold the debt at a discount to its affiliate or that Navidea had retired some of the debt between the measuring date for its Form 10-K and the date of the Assignment Agreement will remain a mystery; curious extrinsic circumstances do not render ambiguous that which is unambiguous.

unjust enrichment is an equitable remedy that may be available when there is no applicable contract. *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment.") (collecting cases). In this case, however, the Assignment Agreement *is* the applicable contract. Unlike a case where a contract is "silent" as to the parties' obligations, the Assignment Agreement unambiguously stripped Platinum-Montaur of any entitlement to the Navidea debt, equitable or otherwise. *See Partner Canada Biomedical Int'l, Inc. v. Amgen, Inc.*, No. 17-CV-5919 (VEC), 2018 WL 3462516, at *5 (S.D.N.Y. July 17, 2018) ("[The] plaintiff may proceed on a theory of unjust enrichment only if the contract is silent as to the parties' obligations in the situation at bar." (citing *Joseph Sternberg, Inc. v. Walber 36th St. Assocs.*, 187 A.D.2d 225, 228 (1st Dep't 1993))).

Accordingly, as with the breach of contract claim, Platinum-Montaur lacks a sufficient personal stake to maintain an unjust enrichment claim against Navidea.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss, which the Court construes as one brought pursuant to Fed. R. Civ. P. 12(b)(1), is GRANTED without prejudice as to all claims. The Clerk of the Court is respectfully directed to terminate the case and all pending motions and deadlines therein.

**SO ORDERED.**

Date: October 31, 2018  
New York, NY

VALERIE CAPRONI  
United States District Judge