Case 18-3535, Document 71, 11/25/2019, 2714619, Page1 of 13
Case 1:17-cv-09591-VEC   Document 48   Filed 11/25/19   Page 1 of 13
N.Y.S.D. Case # 17-cv-9591(VEC)

18-3535-cv
Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.

# United States Court of Appeals
# for the Second Circuit

August Term, 2019

(Argued: September 5, 2019      Decided: November 25, 2019)

Docket No. 18-3535-cv

_____

PLATINUM-MONTAUR LIFE SCIENCES, LLC,

*Plaintiff-Appellant*,

v.

NAVIDEA BIOPHARMACEUTICALS, INC.,

*Defendant-Third-Party-Plaintiff-Appellee*,

v.

PLATINUM PARTNERS CREDIT OPPORTUNITIES MASTER FUND, LP,

*Third-Party-Defendant.*

_____

Before:

    KATZMANN, *Chief Judge,* WALKER AND PARK, *Circuit Judges.*

    Plaintiff Platinum-Montaur Life Sciences, LLC ("Platinum-Montaur"), appeals a decision of the United States District Court for the Southern District of New York (Caproni, *J.*) granting the motion to dismiss of defendant Navidea

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov 25 2019

Biopharmaceuticals, Inc., on grounds that Platinum-Montaur lacked Article III standing.  Because the district court did not first determine whether there was complete diversity of citizenship between the parties, it is unclear whether it had subject-matter jurisdiction under 28 U.S.C. § 1332.  We thus **VACATE** and **REMAND** for further proceedings consistent with this opinion.

> ROBERT J. BURNS (Warren E. Gluck, Barbara P. Parlin, and Kathryn B. Daly *on the brief*), Holland & Knight LLP, New York, New York *for Plaintiff-Appellant*.
>
> ROBERT C. FOLLAND, Barnes & Thornburg, LLP, Columbus, Ohio *for Defendant-Appellee*.

Park, *Circuit Judge*:

Platinum-Montaur Life Sciences, LLC ("Platinum-Montaur") sued Navidea Biopharmaceuticals, Inc. ("Navidea") in state court over a contract dispute.  Navidea removed the case to the United States District Court for the Southern District of New York (Caproni, *J.*).  Navidea asserted that the district court had diversity jurisdiction under 28 U.S.C. § 1332 but it did not identify Platinum-Montaur's citizenship.  The parties conducted limited informal jurisdictional discovery but failed to determine Platinum-Montaur's citizenship.  Instead of ordering further jurisdictional discovery, the district court assumed that it had subject-matter jurisdiction, stating that it could proceed because it had no "good faith basis to believe that there is not complete diversity."

2

We hold that the district court erred by failing to determine whether it had diversity jurisdiction before deciding Navidea's motion to dismiss.  Accordingly, we **VACATE** and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

In 2017, Platinum-Montaur sued Navidea in New York state court to collect on a debt.  Navidea then filed a notice of removal in the United States District Court for the Southern District of New York.  Navidea claimed that the federal court had "diversity jurisdiction under 28 U.S.C. § 1332(a)."  Section 1332(a) gives federal courts jurisdiction to hear controversies "between . . . citizens of different States."  Navidea stated that it was "a Delaware corporation, with a principal place of business in Ohio," making it a citizen of Delaware and Ohio.  28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business.").

But Navidea's notice of removal did not fully specify Platinum-Montaur's citizenship.  Platinum-Montaur is a limited liability company ("LLC"), which takes the citizenship of all of its members.  *See Bayerische Landesbank, New York*

*Branch v. Aladdin Capital Mgmt. LLC,* 692 F.3d 42, 49 (2d Cir. 2012). Navidea stated that Platinum-Montaur was an LLC with three members—two individual residents of New Jersey and Platinum Partners Value Arbitrage Fund, L.P. ("PPVA"), a Cayman Islands Limited Partnership ("LP"). For the purposes of diversity jurisdiction, a partnership takes the citizenship of all of its partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990). Therefore, Platinum-Montaur is a citizen of every state of which PPVA's partners are citizens. Navidea did not identify these partners in its notice of removal, leaving Platinum-Montaur's citizenship uncertain.

Because it was unclear whether the parties before it were diverse, the district court ordered "informal jurisdictional discovery in order to determine the citizenship of [PPVA]." After looking into its own citizenship, Platinum-Montaur determined that one of PPVA's partners was Platinum Partners Value Arbitrage Funds (USA) L.P. ("PPVA Onshore"), a "feeder fund intended for U.S. investors" with around 220 limited partners and which took the citizenship of each partner. *Carden*, 494 U.S. at 195–96. Platinum-Montaur stated that it had tried but failed to determine whether any of PPVA Onshore's partners was a

4

citizen of either Delaware or Ohio, which would destroy diversity of citizenship between Platinum-Montaur and Navidea.[1]

At a status conference, Platinum-Montaur told the court that it was "seeing . . . hundreds of feeder funds, multiple LLCs, [and] unincorporated entities," in its ownership structure. After contacting some of PPVA Onshore's partners in an effort to identify their citizenship, Platinum-Montaur decided to stop and wait on the district court's direction because it was "unclear" to them "when you are just one cog in the chain of the uphill ownership structure how that affects diversity jurisdiction."

The district court asked Platinum-Montaur whether it planned to move for a remand to state court, and Platinum-Montaur responded that it was "really trying to follow the Court's directives" on this issue. The court decided to conclude its jurisdictional inquiry and stated, "I'm not inclined to order [further jurisdictional discovery]. At this point I don't have a good faith basis to believe that there is not complete diversity."

---

[1] PPVA's two other partners were an offshore feeder fund and a Delaware LLC that served as PPVA's general partner. Platinum-Montaur would have to identify the citizenship of these two entities as well as PPVA Onshore to determine its own citizenship.

5

1   Having assumed subject-matter jurisdiction, the district court later granted

2   Navidea's motion to dismiss, finding that as a matter of contract law, Platinum-

3   Montaur had assigned away all of its rights to Navidea's debts and therefore

4   lacked standing to sue. Platinum-Montaur appealed that ruling, and both parties

5   briefed the issue of standing but not subject-matter jurisdiction.

6   **STANDARD OF REVIEW**

7   This court may "*sua sponte* delve into the issue of whether there is a factual

8   basis to support" subject-matter jurisdiction. *Velez v. Sanchez*, 693 F.3d 308, 314

9   (2d Cir. 2012) (cleaned up). We consider "questions of subject matter jurisdiction

10  *de novo*" and are "not limited in our right to refer to any material in the record."

11  *Id.* (citations omitted).[2]

---

[2] If we were to agree with the district court's conclusion that Platinum-Montaur lacked Article III standing to bring this suit, then we would face two threshold jurisdictional questions—Article III standing and statutory diversity jurisdiction. In that event, we would have "inherent flexibility" to choose between them as grounds for dismissal. *Disability Rights New York v. New* York, 916 F.3d 129, 131 n.1 (2d Cir. 2019). We need not make such a choice in this case because the district court's holding—that Platinum-Montaur had no legal right to collect on Navidea's debt because it had assigned away its rights to that debt—is best understood as a merits ruling, not a jurisdictional, Article III standing decision. "As a matter of the English language, the word 'standing' can be used to describe [the] contention [that a plaintiff lacks the legal right to sue under a contract], but 'standing' in this context is entirely distinct from 'standing' for purposes of Article III." *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999). Platinum-Montaur plausibly alleged that it retained a right to the unassigned portion of Navidea's debt, that Navidea "failed to pay [it] the amounts owing" under the debt agreement, and sought damages for that alleged breach. That was enough to allege "an injury in fact . . . that is likely to be redressed by a favorable judicial decision," and therefore enough to allege Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The district court's decision is better understood as a ruling on the merits. *See Perry v. Thomas*, 482 U.S. 483, 492 (1980) (rejecting the "contention that resolving" whether a party could

6

**DISCUSSION**

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owens Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). Perhaps the most important limit is subject-matter jurisdiction, which defines "a court's competence to adjudicate a particular category of cases." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006). "[B]ecause it involves a court's power to hear a case," subject-matter jurisdiction cannot be forfeited, waived, or conferred by consent of the parties. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *Cable Television Ass'n of New York v. Finneran*, 954 F.2d 91, 94 (2d Cir. 1992). "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction," and it must prove jurisdiction by a "preponderance of evidence." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006); *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012).

---

enforce an arbitration agreement was a question of Article III standing and instead characterizing the question as "a straightforward issue of contract interpretation"). We express no view on the proper interpretation of the contracts at issue in this case.

1       This case involves diversity jurisdiction.  Under 28 U.S.C. § 1332, federal

2   courts have jurisdiction to hear civil actions between "citizens of different States"

3   as long as "the matter in controversy exceeds . . . $75,000."  The Supreme Court

4   has interpreted "citizens of different States" to grant jurisdiction only "if

5   diversity of citizenship among the parties is complete, *i.e.*, only if there is no

6   plaintiff and no defendant who are citizens of the same State."  *Wis. Dep't of Corr.*

7   *v. Schacht*, 524 U.S. 381, 388 (1998).  The issue presented in this case is how a

8   district court should proceed when a defendant seeks to remove an action from

9   state court on the basis of diversity jurisdiction, but the notice of removal and

10  underlying pleadings do not establish whether complete diversity exists between

11  the parties.

12      We have remanded or dismissed cases when a plaintiff has invoked the

13  original diversity jurisdiction of a federal district court but failed to include

14  adequate allegations of diversity in the complaint and the record does not allow

15  us to determine the citizenship of one of the parties.  In *Durant, Nichols, Houston,*

16  *Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56 (2d Cir. 2009), the parties

17  disputed the citizenship of the defendant, and the court remanded "for

18  supplementation of the record with findings" regarding his citizenship.  *Id.* at 65–

66. In *John Birch Society v. National Broadcasting Co.*, 377 F.2d 194 (2d Cir. 1967), we dismissed a suit for lack of subject-matter jurisdiction when the plaintiff failed to plead a defendant's citizenship with apparent "intent[] to delay" after receiving multiple opportunities to do so. *Id.* at 199; *see also Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 55 (2d Cir. 2019) (noting that dismissal may be appropriate "even absent an intent to delay" if "the party seeking to invoke federal jurisdiction has been given an opportunity to amend their pleadings" but "failed to do so").

"In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991), *superseded by rule on other grounds as recognized by Contino v. United States*, 535 F.3d 124, 127 (2d Cir. 2008). As a result, "[w]e are not inclined to countenance prolonged preliminary litigation over the removal issue simply because [the defendant] failed in the first instance to aver a proper jurisdictional basis for removal." *Lupo v. Human Affairs Intern.*, 28 F.3d 269, 274 (2d Cir. 1994).

1   That being said, a district court has discretion to order jurisdictional

2   discovery in a removal case with improperly pleaded citizenship. For example,

3   in *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Centermark*

4   *Properties Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994), a union sued several

5   shopping centers in state court. When the defendants removed the case to

6   federal court, their notice of removal improperly asserted the union's citizenship

7   because, in the context of that case, the union took "the citizenship of *each* of its

8   members," and the notice of removal did not list the union's members or their

9   citizenship. *Id.* at 302. We remanded for the district court to determine whether

10  it had jurisdiction because "we [were] not free to speculate on the citizenship" of

11  the union's members "in the complete absence of any evidence." *Id.* at 302–03.

12  In this case, Platinum-Montaur filed suit in state court and Navidea sought

13  to remove the action to federal court pursuant to 28 U.S.C. § 1441. As the party

14  invoking federal jurisdiction, it was Navidea's burden to establish the existence

15  of diversity jurisdiction. *United Food*, 30 F.3d at 301. But as we have noted,

10

Navidea's notice of removal and the underlying state-court record failed to establish whether the parties to this action were completely diverse.[3]

A district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence.  Here, the district court erred by exercising diversity jurisdiction on the basis that it did not have a "good faith basis to believe" that the parties before it were not completely diverse.

After the parties began conducting informal jurisdictional discovery, they realized that it would be difficult to ascertain Platinum-Montaur's citizenship because of the company's complex ownership structure.[4]  Platinum-Montaur acknowledged, however, that further discovery would likely allow it to identify the citizenship of the partners of PPVA Onshore and the other entities that made up PPVA, and therefore, to determine its own citizenship.

At this stage, the district court had two options.  First, it could have remanded the case to state court because Navidea had failed to allege complete

---

[3]  We note, however, that because Navidea was a citizen of Delaware, there would be no diversity if any one of PPVA Onshore's 220 partners were also a citizen of Delaware.  It seems unlikely that none of these 220 American corporate entities was a citizen of Delaware, but "we are not free to speculate" on Platinum-Montaur's citizenship without further evidence.  *United Food*, 30 F.3d at 302.

[4]  Although Platinum-Montaur told the district court it was willing to consent to federal jurisdiction, "parties may not confer subject matter jurisdiction on the court by consent." *Cable Television*, 954 F.2d at 94.

11

1   diversity of citizenship or to establish diversity through discovery.  *See* 28 U.S.C.

2   § 1447(c).  Second, the district court could have exercised its discretion to order

3   further discovery to determine whether there was complete diversity of

4   citizenship.  *See United Food*, 30 F.3d at 302–03.  We note, however, that such

5   discretion should be exercised with caution.  *See Lupo*, 28 F.3d at 274 ("Removal

6   procedures seek a rapid determination of the proper forum for adjudicating an

7   action.").

8          Here, none of the underlying state-court pleadings, the notice of removal,

9   or the record as a whole reflected that the parties were completely diverse.  Thus,

10  the district court erred by proceeding to the merits of this case.  We therefore

11  remand so that the district court can exercise its discretion to conduct further

12  proceedings, if any, as it deems appropriate.

13         It bears noting that scrupulous enforcement of these jurisdictional rules

14  may make it more difficult for many business entities to sue or to be sued in

15  federal court under diversity jurisdiction.  "LLCs have become the dominant

16  vehicle for doing business in the United States," and LLCs with many members

17  may share the citizenship of their adversaries in litigation, meaning that they

18  cannot proceed in federal court under Section 1332.  *Lincoln Benefit Life,* 800 F.3d

1   at 112 (Ambro, *J.*, concurring) (citation omitted).  Nonetheless, even when the

2   citizenship of an LLC or LP is in question, a district court may not proceed to the

3   merits without first determining whether it has subject-matter jurisdiction.

4                              **CONCLUSION**

5       For the foregoing reasons, the judgment of the district court is **VACATED**

6   and **REMANDED** for further proceedings consistent with this opinion.